IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 4, 2003

## STATE OF TENNESSEE v. JEFFERY W. ALEXANDER

**Appeal from the Circuit Court for McNairy County**
**No. 1420A     Jon Kerry Blackwood, Judge**

---

**No. W2002-01722-CCA-R3-CD  - Filed May 23, 2003**

---

Convicted of burglary and theft of property valued at more than $1,000 but less than $10,000, the defendant, Jeffery W. Alexander, claims on appeal that the convictions are unsupported by sufficient evidence, that the trial court erred in admitting copies of photographs of the crime scene, and that the trial court erroneously sentenced him as a career offender. Because our review of the record, the briefs, and the applicable law exposes no reversible error, we affirm.

**Tenn. R. App. P. 3; Judgments of the Circuit Court are Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON and DAVID H. WELLES, JJ., joined.

Paul Simpson, Selmer, Tennessee (at trial); and Didi Christie, Brownsville, Tennessee (on appeal), for the Appellant, Jeffery W. Alexander.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Jerry W. Norwood, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

A McNairy County Circuit Court grand jury indicted the defendant and two other men, Kenneth Killingsworth and Jimmy Williams, for the July 30, 2001 burglary of the Adamsville Pharmacy, *see* Tenn. Code Ann. § 39-14-402(1) (1997), and the theft of pharmaceuticals from the store, *see id.* §§ 39-14-103, - 105(3) (1997). A jury convicted the defendant of both offenses, and following a sentencing hearing, the trial court sentenced him as a career offender to serve two concurrent, twelve-year, Department of Correction sentences.

In the light most favorable to the state, the evidence admitted at trial showed the following. The pharmacist and owner of the Adamsville Pharmacy closed and locked the store early

on the evening of July 30, 2001. At approximately 11:50 p.m., the store's security contractor, ADT, telephoned the police to report that the store's alarm had been triggered. An officer testified that he responded immediately, and upon going to the rear window of the store, he saw the defendant, whom he had known for a number of years, raking bottles of drugs off shelves into a box. At some point, the defendant saw the officer and ran out the back door, which was passable via a dead-bolt lock that could be levered from inside. The officer testified that he kept his eyes on the defendant and apprehended him in the parking lot. He found no drugs on the defendant's person. The officer later discovered that the drive-through window of the store had been pried open, and the box the defendant was using to collect drugs was sitting inside the store beside the rear door through which the defendant had exited.

Because the officer saw Killingsworth cruising slowly about the vicinity, the officer instructed a second officer to locate and detain Killingsworth for questioning, which ultimately caused the police to believe that Williams also had been involved in the burglary. About two hours after the defendant had been arrested, an officer located Williams walking along the highway in the vicinity of the pharmacy. He was carrying a box containing bottles of pharmaceuticals taken from the store.

Williams testified at trial that he and the defendant had been riding around with Killingsworth in Killingsworth's car. When they drove by the pharmacy, they decided to break in and steal drugs. Killingsworth drove to the rear of the store and waited while the defendant pried open the drive-through window with a screwdriver. Killingsworth then drove away from the store to wait across the street at a restaurant owned by Williams' parents. Williams testified that he waited outside the pharmacy while the defendant climbed inside through the breached window. The store's alarm sounded. The defendant handed Williams a box full of drugs and exited the window. The two men took the box into a field that abutted the rear of the store. Williams testified that the defendant told him that the defendant was going back into the store. After the defendant did so, Williams watched as the officer arrived then chased and caught the defendant. Williams testified that he waited undetected in the field for a couple of hours and then began walking away along the highway. Before long, a police officer stopped and arrested him. Williams testified that, prior to the defendant's trial, he had pleaded guilty to the offenses.

In the defendant's first issue on appeal, he challenges the sufficiency of the convicting evidence by asserting that the state's witnesses were not credible.

In reviewing the sufficiency of the convicting evidence, we apply a familiar standard. When an accused challenges the sufficiency of the evidence, an appellate court inspects the evidentiary landscape, including its direct and circumstantial contours, from the vantage point most agreeable to the prosecution. The reviewing court then decides whether the evidence and the inferences that flow therefrom permit any rational fact finder to conclude beyond a reasonable doubt that the defendant is guilty of the charged crime. *See Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); Tenn. R. App. P. 13(e); *State v. Duncan*, 698 S.W.2d 63, 67 (Tenn. 1985). This rule applies to findings of guilt based on direct evidence, as well as circumstantial evidence or

a combination thereof. *See State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000). On appeal, a defendant no longer enjoys the presumption of innocence; consequently, he shoulders the burden of demonstrating that the evidence is legally insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

In determining sufficiency of the evidence, the court does not replay and reweigh the evidence. *See State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Of critical importance in the present case, witness credibility, the weight and value of the evidence, and factual disputes are entrusted to the finder of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). This court may not substitute its inferences for those drawn by the trier of fact from the evidence. *See Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); *Farmer v. State*, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). Rather, this court extends to the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences that may be drawn from the evidence. *See Cabbage*, 571 S.W.2d at 835.

Applying these principles, we readily discern from the record that the testimony of the state's witnesses, when accredited as it apparently was by the jury, overwhelmingly established the defendant's guilt. We do not revisit the issues of witness credibility. The defendant had his opportunity to test the worth of the state's case in the crucible of trial, wherein the jury resolved the factual issues against him. Because the evidence undergirds the jury's findings, we may not disturb those findings on appeal.

In his next issue, the defendant complains that some of the photographs introduced into evidence by the state were copies of photographs and some were not authenticated by the photographer or any other person present when the photographs were taken. The state counters this claim by arguing that the photographs were properly admitted and that, in any event, the defendant waived the issue on appeal because he failed to make a timely objection when the photographs were offered into evidence. We agree with the state on the waiver issue and need not analyze the merits of the claim.

At trial, the defendant did not object to the introduction of the photographs. To preserve the issue of the admission of evidence for appellate adjudication, the aggrieved party must object in a timely manner. Tenn. R. Evid. 103; Tenn. R. App. P. 36(a). Thus, the issue of the admission of the photographs into evidence is not justiciable on appeal.

Finally, the defendant claims that the trial court erred in sentencing him as a career offender. When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991); *see State v. Hooper*, 29 S.W.3d 1, 5 (Tenn. 2000). "The burden of

showing that the sentence is improper is upon the appellant." *Ashby*, 823 S.W.2d at 169. In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely *de novo*. *Id.* If appellate review, however, reflects that the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

Tennessee Code Annotated section 40-35-108(a) provides that a defendant convicted of Class D offenses, as is the defendant in the present case, may be classified for sentencing purposes as a career offender if he has received "[a]t least six (6) or more prior felony convictions of any classification." Tenn. Code Ann. § 40-35-108(a) (1997). The Code deems "prior conviction" to mean "a conviction for an offense occurring prior to the commission of the offense for which the defendant is being sentenced," *id.* § 40-35-108(b)(1) (1997); however, "[c]onvictions for multiple felonies committed as part of a single course of conduct within twenty-four (24) hours constitute one (1) conviction for the purpose of determining prior convictions," except when the prior crimes are based upon threatened or actual bodily injury to a victim or victims. *Id.* § 40-35-108(b)(4) (1997).

In the present case, the record shows that the defendant received the following prior felony convictions:

| Offense | Event/Arrest | Judgment |
|---|---|---|
| (1) possession of drugs | January 14, 1991 | May 15, 1991 |
| (2) aggravated burglary | January 12, 1991 | May 15, 1991 |
| (3) aggravated burglary | January 9, 1991 | May 15, 1991 |
| (4) aggravated burglary | January 2, 1991 | May 15, 1991 |
| (5) aggravated burglary | December 26, 1990 | May 15, 1991 |
| (6) aggravated burglary | December 22, 1990 | May 15, 1991 |
| (7) aggravated burglary | November 24, 1990 | May 15, 1991 |
| (8) aggravated burglary | not provided | Feb. 11, 1988 |
| (9) forgery | not provided | Feb. 11, 1988 |
| (10) aggravated burglary | September 27, 1987 | Dec. 27, 1987 |

Although, seven of the prior felonies were disposed of on May 15, 1991, and two were disposed of on February 11, 1988, there is no evidence of record that shows that any of the prior felonies were "committed" as a single course of conduct with, and within 24 hours of, any of the other felonies. The two 1988 convictions were imposed on February 11, 1998, the date of the offenses is not provided, and we find no proof that these 1998 offenses were part of a single course of conduct.

Accordingly, we discern no basis for the defendant's claim that the trial court erred in sentencing him as a career offender.

Having adjudicated the appellate issues, we affirm the lower court's judgments.

_____
JAMES CURWOOD WITT, JR., JUDGE